IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
MAY – 1 2017
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES OF AMERICA,

v.

CRAIG JERABECK,

                    Defendant.

17-CR-6089-DGL

## PLEA AGREEMENT

The defendant, CRAIG JERABECK, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I.    THE PLEA AND POSSIBLE SENTENCE

1.    The defendant agrees to waive indictment and to plead guilty to a two-count Superseding Information which charges the following:

a. In Count 1, conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349, for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $250,000, or twice the gross pecuniary gain or loss, whichever is greater, a mandatory $100 special assessment and a term of supervised release of 3 years; and

b. In Count 2, filing a false tax return for the year 2012 in violation of Title 26, United States Code, Section 7206(1), for which the maximum possible sentence is a term of

imprisonment of 3 years, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of 1 year.

The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 3 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.    ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offenses set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crimes:

Conspiracy to Commit Wire Fraud

- a. Two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful scheme to commit wire fraud.

- b. The defendant, knowing the unlawful purpose of the scheme, willfully joined in it.

2

Filing False Tax Return

    a. The defendant made or caused to be made, and subscribed an income tax return for the year 2012 that was false to a material matter.

    b. The return contained a written declaration that it was made under the penalties of perjury.

    c. The defendant did not believe the return to be true and correct as to the material matters charged in the Information.

    d. The defendant made, or caused to be made, and subscribed the return willfully.

## FACTUAL BASIS

4.    The defendant and the government agree to the following facts, which form the

basis for the entry of the pleas of guilty including relevant conduct:

Conspiracy to Commit Wire Fraud

    a. In or about 2001, the defendant, along with Jason Guck and Jeb Tyler, started 5LINX Enterprise, Inc. (5LINX), a multi-level marketing company headquartered in Rochester, New York, which offered utility and telecommunication services, health insurance, nutritional supplements, and business services.

    b. 5LINX used independent representatives to sell products and services, and to recruit additional representatives. The recruited representatives were part of the initial representative's "downline" organization. All 5LINX representatives were independent contractors, and not employees. 5LINX paid the representatives for their sales as well as a percentage of both their downline representatives' sales and the fee the downline representatives paid to join 5LINX.

    c. From in or about 2001, to in or about 2015, the defendant was President and Chief Executive Officer; Guck was Vice President and Secretary; and Tyler was Vice President; of 5LINX. In addition to the defendants, 5LINX, at times, had several other stockholders.

    d. On or about June 23, 2006, 5LINX entered into a Stock Purchase Agreement with investment companies, Trillium Lakefront Partners III, L.P., Trillium Lakefront Partners III, NY L.P., and Shalam Investment

3

Co., LLC (collectively known as "the Investors"). The Investors paid $3,500,000 for stock and a substantial ownership stake in 5LINX.

e. As part of the Stock Purchase Agreement, the defendant, along with Guck and Tyler, entered into separate Stockholders Agreements with 5LINX, which, among other things, set their compensation and potential bonuses at certain amounts. Any increase in their compensation and bonuses required approval by the 5LINX's Board of Directors, which now included members elected by the Investors.

f. On or about July 6, 2007, 5LINX entered into a second Stock Purchase Agreement with the Investors. The Investors paid $2,000,000 for additional stock and a larger ownership stake in 5LINX.

g. On or about January 2, 2014, the Investors agreed to sell their stock and ownership stake in 5LINX back to 5LINX.

h. From in or about May 2010 to April 2016, 5LINX sold and distributed products for a Florida vendor. The defendant, along with Guck and Tyler, and without the knowledge of the Investors, Board of Directors, or other stockholders, conspired and agreed to cause the Florida vendor to pay them personally or companies they owned approximately $2,310,510, which their Stockholders Agreements prohibited them from receiving. 5LINX, its investors (as owners between 2006 and January 2014, and as creditors thereafter), and stockholders were entitled to and should have received such funds instead of defendant, Guck, and Tyler. The Florida vendor made the payments by interstate wire transmissions, that is, payments from the Florida vendor's bank accounts were wired to bank accounts controlled by the defendant, Guck, and Tyler in the Western District of New York.

Filing False Tax Returns

a. The defendant provided material false information on his personal tax returns, Forms 1040, for the years 2011 through 2013, and 2015. Specifically, the defendant (a) failed to report income he received from 5LINX, and (b) took deductions to which he was not entitled, that is, commissions that were not paid. The false returns resulted in a tax loss of approximately $118,628.

b. The defendant caused to be made, and willfully signed the income tax returns for the years 2011 through 2013, and 2015 believing that the returns were false as to material matters and were not true and correct. Further, the returns contained a written declaration that they were made under the penalties of perjury.

## III. SENTENCING GUIDELINES

5. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984). The government and the defendant agree that in accordance with Guidelines §3D1.2(d), the defendant's offenses of conviction for violations of 18 U.S.C. §1349 and 26 U.S.C. §7206(1) are grouped together. The government and the defendant further agree that Guidelines §2B1.1 applies to the offenses of conviction because this guideline section produces the highest offense level.

## BASE OFFENSE LEVEL

6. The government and the defendant agree that Guidelines § 2B1.1(a) provides for a base offense level of 7.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

7. The government and the defendant agree that the following specific offense characteristics do apply:

- a. § 2B1.1(b)(1)(I): the total loss (including relevant conduct) was in excess of $1,500,000 (namely, approximately $2,310,510 for the violation of 18 U.S.C. §1349 and approximately $118,628 for the violation of 26 U.S.C. §7206(1)) and thus there is a 16 offense level increase; and

- b. the two level increase pursuant to Guidelines § 2B1.1(b)(10)(C) (offense involved sophisticated means).

5

## U.S.S.G. CHAPTER 3 ADJUSTMENTS

8.     The government and the defendant agree that the following adjustment to the base offense level does apply:

>     a. The 2 level upward adjustment of Guidelines § 3B1.3 (abuse of trust/special skill).

## ADJUSTED OFFENSE LEVEL

9.     Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offenses of conviction is 27.

## ACCEPTANCE OF RESPONSIBILITY

10.     At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of 24.

## CRIMINAL HISTORY CATEGORY

11.     It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the pleas of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

12.     It is the understanding of the government and the defendant that, with a total offense level of 24 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 51 to 63 months, a fine of $20,000 to $200,000, and a period of supervised release of 1 to 3 years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

13.     The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

14.     The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

## IV.     STATUTE OF LIMITATIONS

15.     In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to

7

this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.

## V.    GOVERNMENT RIGHTS AND RESERVATIONS

16.    The defendant understands that the government has reserved the right to:

a.    provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.    advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and a fine and the method of payment;

d.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

e.    oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

17.     At sentencing, the government will move to dismiss the Superseding Indictment as against the defendant.

## VI.     RESTITUTION AND FINANCIAL PENALTY PROVISIONS
## (Conspiracy to Commit Wire Fraud)

18.     The defendant understands, and the parties agree, that with respect to the defendant's guilty plea to Count 1 of the Information the Court must require restitution in the approximate amount of $2,310,510 to be paid to the victims as part of the sentence pursuant to Sentencing Guidelines § 5E1.1 and Title 18, United States Code, Section 3663A. The defendant understands that defendant will not be entitled to withdraw the pleas of guilty based upon any restitution amount ordered by the Court.

19.     The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the United States relating to the defendant's complete financial disclosure. The defendant will submit to an examination

9

under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

20.    The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

21.    The defendant understands and agrees that the Court, at the time of sentencing, will order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and subject to immediate enforcement by the United States. The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

22.    The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

23.    To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance bond in this case, which funds shall be applied to satisfy the financial obligation(s) of the defendant pursuant to the judgment of the Court.

24.    The defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor in considering whether the defendant has accepted responsibility under the United States Sentencing Guidelines §3E1.1.

## VII.    RESTITUTION AND PAYMENT OF TAX LIABILITY
### (Filing False Tax Return)

25.    The defendant understands, and the parties agree, that with respect to the defendant's guilty plea to Count 2 of the Information and for the defendant's federal tax returns for the years 2011, 2012, 2013, and 2015, the defendant agrees to pay restitution to the Internal Revenue Service in the total amount of $118,628, pursuant to Title 18, United States Code, Section 3663(a)(3), plus interest on the tax from the due date of the tax returns at the rates specified in 26 U.S.C. §§ 6621 and 6622.    The defendant understands that

11

defendant will not be entitled to withdraw the pleas of guilty based upon any restitution amount ordered by the Court.

26. The defendant agrees that the total amount of restitution reflected in this agreement results from the defendant's fraudulent conduct.

27. The defendant agrees to pay restitution by making payment as ordered by the Court in any restitution order entered pursuant to this plea agreement.

28. If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. See 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

29. The defendant agrees that the defendant will sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of that portion of the tax and interest that he agrees to pay as restitution. The defendant also agrees to sign IRS Form 8821, "Tax Information Authorization."

30. The defendant agrees not to file any claim for refund of taxes or interest represented by any amount of restitution paid pursuant to this agreement.

31. The defendant agrees that the defendant is liable for the fraud penalty under 26 U.S.C. § 6663 or § 6651(f) on the amount to be credited to tax set forth above. The defendant agrees to the immediate assessment of the fraud penalty on the amount to be credited to tax set forth above and agrees that, in order to enable the IRS to make an immediate assessment of the fraud penalty, any IRS forms the defendant agreed to sign as set forth above will include the appropriate amount of the fraud penalty. The defendant agrees not to challenge or dispute any fraud penalties on the amount to be credited to tax set forth above.

32. The parties understand that the defendant will receive proper credit, consistent with the above, for the payments made pursuant to this agreement. Except as set forth in the previous sentence, nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest due from the defendant for the time-periods covered by this agreement or any other time-period.

33. The defendant agrees that this agreement, and any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time periods covered by this agreement or any other time period.

34.     The defendant understands that the defendant is not entitled to credit with the IRS for any payment sent to an incorrect address or accompanied by incomplete or inaccurate information, unless and until any payment is actually received by the Internal Revenue Service and identified by it as pertaining to the defendant's particular liability.

35.     The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the United States relating to the defendant's complete financial disclosure. The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

36.     The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

37.     The defendant understands and agrees that the Court, at the time of sentencing, may order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and subject to immediate enforcement by the United States. The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

38.     The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

39. To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance bond in this case, which funds shall be applied to satisfy the financial obligation(s) of the defendant pursuant to the judgment of the Court.

40. The defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor in considering whether the defendant has accepted responsibility under the United States Sentencing Guidelines §3E1.1.

## VIII. APPEAL RIGHTS

41. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶12, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed the total of the amounts set forth in Sections VI and VII of this agreement.

42. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

43. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶12, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## IX. COOPERATION

44. The defendant will cooperate with the government by providing complete and truthful information regarding the defendant's knowledge of any and all criminal activity, whether undertaken by the defendant or others, in any way involving or related to 5Linx Enterprise, Inc., any entities owned by the defendant, wire fraud, money laundering and tax fraud. The defendant's cooperation shall also include submitting to interviews by government attorneys and agents, as well as testifying truthfully and completely before grand juries and at such other proceedings as the government shall deem necessary, including, but not limited to pre-trial hearings, trials, sentencing hearings and forfeiture proceedings.

45.     The defendant's cooperation shall also be provided to any local, state or federal authorities designated by the government and who have agreed to abide by the terms of the "Cooperation" section of this agreement. The defendant's obligation to testify truthfully and completely shall extend to proceedings in local, state and federal courts in jurisdictions which have agreed to abide by this agreement.

46.     In exchange for the defendant's pleas of guilty and cooperation as set forth in this agreement, the defendant will not be prosecuted by the Office of the United States Attorney for the Western District of New York for any other federal criminal offenses committed in the Western District of New York in any way involving or related to 5LINX, wire fraud, money laundering and tax fraud.

47.     Further, no testimony, statements or tangible objects provided by the defendant in compliance with this agreement (or any information directly or indirectly derived therefrom) will be used against the defendant in any criminal case, except a prosecution for perjury or making false statements.

48.     Upon condition that the defendant has fully complied with all terms and conditions of this agreement, should the government determine that the defendant has provided substantial assistance in the investigation or prosecution of other persons who have committed offenses, the government will move the Court at sentencing to depart downward from the Guidelines as provided for in Guidelines § 5K1.1. The defendant understands that the decision to make such a motion is within the sole discretion of the government and that

the decision to grant such a motion, and the extent of any downward departure, are matters solely within the discretion of the Court.

49.     This agreement does not preclude the prosecution of the defendant for perjury or making false statements in the event the defendant testifies falsely or provides false information to the government. This agreement is not contingent upon the filing of charges against, the return of an Indictment against, or the successful prosecution of, any person or entity.

50.     It is a condition of this agreement that, up through the date of the defendant's sentencing, the defendant shall commit no further crimes. It is also a condition of this agreement that the defendant must, at all times, give complete, truthful and accurate information and testimony and not withhold information from the government or refuse to testify truthfully and completely. Should the defendant be sentenced prior to the completion of the defendant's cooperation with the government, the defendant's obligation to comply with the cooperation provisions of this agreement extends past sentencing.

51.     In the event the government believes the defendant has violated any of the conditions of the "Cooperation" section of this agreement, the government, in addition to its other rights as set forth in the "Cooperation" section of this agreement, reserves the right: (a) to modify any recommendation the government agreed to make in a motion pursuant to Guidelines § 5K1.1 and/or Title 18, United States Code, Section 3553(e); and (b) to petition the Court, before or after sentencing, for an order declaring that the defendant has breached the "Cooperation" section and relieving the government of its obligations under this section.

52.     In the event the government petitions the Court to declare that the defendant

has breached the "Cooperation" section of this agreement, whether the defendant has violated

any of the conditions of the "Cooperation" section shall be determined by the Court in an

appropriate proceeding at which any disclosures and documents provided by the defendant

shall be admissible and at which the government shall be required to establish any violation

by a preponderance of the evidence. In order to establish any violation by the defendant, the

government is entitled to rely on statements and information given by the defendant pursuant

to this agreement.

53.     If the "Cooperation" section of this agreement is declared breached by the

Court:

a.     the defendant shall thereafter be subject to prosecution for any federal
criminal violations of which the government has knowledge, including
but not limited to, perjury and obstruction of justice;

b.     the government may withdraw any motion filed pursuant to Sentencing
Guidelines § 5K1.1, Title 18, United States Code, Section 3553(e)
and/or Rule 35(b);

c.     the defendant has no right to withdraw the plea(s) of guilty;

d.     the defendant shall waive all rights under Fed. R. Crim. P. 11(f), Fed.
R. Evid. 410 and Sentencing Guidelines § 1B1.8 and the defendant
expressly agrees that all statements, testimony and tangible objects
provided by the defendant (with the exception of statements made in
open court during guilty plea proceedings), whether prior or subsequent
to this agreement, can be used directly and indirectly in any and all
criminal proceedings against the defendant; and

e.     the defendant agrees that any charges that were dismissed pursuant to
this agreement shall be automatically reinstated upon motion of the
government. Furthermore, the defendant agrees not to assert the statute
of limitations as a defense to any federal criminal offense which is not

20

time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the Court's order declaring the agreement breached by the defendant becomes final.

54. At the time of sentencing, the government will make the nature and extent of the defendant's compliance with this agreement known to the Court. The government and the defendant will request that sentencing be adjourned until full satisfaction by the defendant of the terms of this agreement. In the event the defendant is sentenced prior to the completion of the defendant's cooperation with the government, the government reserves the right to modify any recommendation to be made by the government at sentencing pursuant to Guidelines § 5K1.1 and/or Title 18, United States Code, Section 3553(e).

55. The defendant's attorney is permitted to be present at any time the defendant is questioned or interviewed by government agents regarding the matters set forth in this agreement.

## X. FORFEITURE PROVISIONS

56. As a condition of the plea, the defendant agrees not to contest any forfeiture or abandonment proceeding that has been brought by the United States and agrees to immediately civilly forfeit all of the defendant's right, title and interest to any and all properties which are subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1) (A) and (C), and Title 28, United States Code, Section 2461(c), which is in the possession and control of the defendant or the defendant's nominees. That property includes:

## A. REAL PROPERTY

a) 90 East Lake Road, Middlesex, New York, (hereinafter referred to as the "defendant real property"), that is all that tract or parcel of land situated in the town of Middlesex, county of Yates, and state of New York, and more particularly described in a certain deed recorded in the Yates County Clerk's Office under instrument number 2012-00000634 in Book of Deeds Volume 639 at Page 191.

57.    The defendant acknowledges that the government has commenced a civil forfeiture action against the above-described real property, under 17-CV-6167L. This plea agreement is subject to the execution and filing of a stipulation settling this civil forfeiture action pursuant to which the defendant agrees to forfeit the above-described real property to the government in the civil forfeiture action and agrees to provide and execute any other documents the United States deems necessary to resolve the civil forfeiture action.

58.    The defendant agrees that he will not authorize/assist, 90 Lake Road East, L.L.C. or Mary Jerabeck, to contest the forfeiture of the above-described real property in any civil forfeiture proceeding. The defendant agrees that 90 Lake Road East, L.L.C. will not file any petitions or claims with regard to the above-described real property. The defendant further agrees that as part of this agreement, 90 Lake Road East, L.L.C. will agree to the civil forfeiture of the above-described real property. The defendant warrants and represents to the Court that 90 Lake Road East, L.L.C. will under separate consent agreement with the government, give up all of its right, title and interest above-described real property.

59.     It is expressly agreed and understood that the agreement for civil forfeiture or abandonment of the above-described real property is binding upon the defendant and survives any voiding of this plea agreement.

60.     The defendant agrees that forfeiture of the above-described real property as set forth in this agreement shall not be deemed an alteration of the defendant's sentence. Forfeiture of the defendant's property shall not necessarily be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture. However, it is understood by the defendant that the government may, in its sole discretion, recommend to the Attorney General that any of the forfeited proceeds be remitted or restored to the eligible victims of the offense, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. Pt. 9, and other applicable law, it being understood that the United States Attorney's Office has authority only to request such relief and that the final decision of whether to grant relief rests with the Department of Justice, which will make its decision in accordance with applicable law. The defendant further expressly understands that one of the factors to be considered by the Department of Justice in approving any such restoration request is whether or not the defendant has other assets with which he could pay the restitution judgment and the defendant shall have no recourse in the event the restoration request is denied.

## XI.     TOTAL AGREEMENT AND AFFIRMATIONS

61.     This plea agreement represents the total agreement between the defendant, CRAIG JERABECK and the government. There are no promises made by anyone other

23

than those contained in this agreement.    This agreement supersedes any other prior

agreements written or oral, entered into between the government and the defendant.

                                    JAMES P. KENNEDY, JR.
                                    United States Attorney
                                    Western District of New York

                              BY:    _____

                                    RICHARD A. RESNICK
                                    Assistant United States Attorney
                                    United States Attorney's Office
                                    100 State Street, Room 500
                                    Rochester, New York 14614
                                    585/399-3941

                                    Dated:  May 1, 2018

## ACKNOWLEDGEMENT

I have read this agreement, which consists of 25 pages. I have had a full opportunity to discuss this agreement with my attorney, James L. Nobles, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

CRAIG JERABECK
Defendant

Dated: May __1__, 2018

JAMES L. NOBLES, ESQ.
Attorney for the Defendant

Dated: May __1__, 2018